UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROGER DWYER,                                          :
3326 Darien Road                                      :
Bethlehem, PA 18017                                   :
     Plaintiff,                 : CIVIL ACTION NO.: _____
                                                      :
v.                                                    : JURY TRIAL DEMANDED
                                                      :
THE BOEING COMPANY,                                   :
100 N. Riverside Plaza                                :
Chicago, IL 60606                                     :
     Defendant.                 :

**COMPLAINT**

## I.    INTRODUCTION

1.    Plaintiff Roger Dwyer (hereinafter, the "Plaintiff") brings this action against his former employer, Defendant The Boeing Company (hereinafter, "Boeing" or the "Defendant") for unlawful employment discrimination based on age and disability, and retaliation. Defendant discriminated against Plaintiff because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (hereinafter, the "ADEA") and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* (hereinafter, the "PHRA"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

2.    Specifically, Defendant terminated Plaintiff shortly after learning of his need for medical leave while retaining younger, less experienced employees, thereby engaging in unlawful age and disability discrimination.

## II.    JURISDICTION AND VENUE

3.    Because this case is brought under the ADEA, 29 U.S.C. § 621 et seq., this Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4).

4.    Mr. Dwyer's job with Defendant was, at all times relevant hereto, in the Eastern

1

District of Pennsylvania.

5.    Venue is proper in the Eastern District of Pennsylvania because Plaintiff's cause of action arose within this District in that a substantial part of the acts and omissions giving rise to the claims in this case occurred in this District. *See* 28 U.S.C. § 1391(b).

6.    Because the Defendant is subject to personal jurisdiction in this District, it "resides" in this District for venue purposes (*see* 28 U.S.C. § 1391(c)).

7.    On or about February 19, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of acts of discrimination alleged herein. This Charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").

8.    On or about February 3, 2026, the EEOC issued to Plaintiff a Notice of Rights. Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of that notice (with personal identifying information redacted).

9.    Plaintiff has fully complied with all administrative prerequisites for the commencement of this action and has exhausted his administrative remedies.

## III.    PARTIES

10.    Plaintiff Roger Dwyer is an individual and a citizen of the Commonwealth of Pennsylvania. Plaintiff resides in Bethlehem, Northampton County, Pennsylvania.

11.    Plaintiff was 71 years old at the time of his termination.

12.    Defendant The Boeing Company is a corporation doing business in Pennsylvania and employing well over fifteen employees.

13.    At all times hereto, Defendant employed more than twenty (20) employees.

14.    At all times hereto, Defendant acted by and through their authorized agents,

2

servants, workers, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

15.    At all times hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

16.    At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

17.    Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

18.    Plaintiff has satisfied all administrative prerequisites to filing this action.

## V.    FACTUAL ALLEGATIONS

19.    Plaintiff was hired by Defendant on or about August 4, 2023, as a Mid-Level Procurement Agent and was employed by Defendant on or about,                    , the date of his unlawful termination.

20.    Plaintiff is 71 years old and was 70 years old at the time that he was hired by Boeing and within the protected class under the ADEA.

21.    Plaintiff had the position of Mid-Level Procurement Agent, Level 3, with Boeing Defense Space and Security, located in Ridley Park, Pennsylvania where he performed tasks and supervised the work of other employees.

22.    Plaintiff began working for the Defendant in August or September of 2023. Plaintiff left a position with another company, where he had seventeen years' seniority, in order to take this position with Boeing.

23.     On or about November 6, 2024, Roger submitted a claim for disability benefits, because of a forthcoming surgery and recovery therefrom. On November 12, 2024, Boeing wrote a letter confirming review of his request for leave. On November 16, 2024, Boeing notified Roger of a permanent layoff, effective November 17, 2024.

24.     Plaintiff consistently demonstrated excellent job performance in his job and performed his duties in a highly competent manner.

25.     Plaintiff's employment with Boeing was not only marked by his being available to effectively provide on-the-job training to these team members; in fact, Plaintiff was selected for the receipt of Boeing Pride Points, an action taken in recognition of Plaintiff's positive contributions to Boeing's operations.

26.     Plaintiff was qualified for his position and successfully performed his duties.

27.     Plaintiff received positive feedback and recognition for his performance, including the receipt of Boeing Pride Points.

28.     Plaintiff also mentored and trained younger, less experienced employees.

29.     Despite being hired at the same level as other procurement agents, Plaintiff was not provided with the same onboarding training opportunities afforded to substantially younger employees.

30.     Specifically, younger and less experienced employees—including, but not limited to, individuals in their 20s and early 30s—were provided structured, extended training, including one-on-one instruction and mentorship, which Plaintiff was denied.

31.     For example, younger employees who had significantly less tenure than Plaintiff received approximately eight (8) weeks of dedicated, structured training, including individualized instruction, training and support which Plaintiff did not receive at any point during his

employment.

32.     Plaintiff raised concerns to management regarding the lack of adequate training during his first several months of employment, advising that the absence of training materially impaired his ability to perform at the expected level.

33.     In response, Plaintiff was informed that the enhanced training being provided to newer, younger employees was implemented based on feedback such as Plaintiff's—yet Plaintiff himself was never provided the benefit of such training.

34.     In addition to disparities in training, younger employees were assigned mentors who provided ongoing instruction and guidance regarding Boeing's procurement systems, while Plaintiff was not assigned any comparable mentor or support.

35.     Despite the lack of training and support, Plaintiff was assigned highly complex and demanding work, including responsibility for "Lot 28," a major procurement contract involving millions of dollars and significant operational complexity.

36.     Upon information and belief, even experienced and seasoned employees found such assignments difficult, and Plaintiff's assignment to such work without adequate training set him up to struggle in comparison to younger, better-supported employees.

37.     Employees and coworkers expressed surprise that Plaintiff was assigned such a large and complex project given his lack of training, further evidencing the disparity in treatment.

38.     Plaintiff was not provided with any structured or formal training upon hire and instead was forced to rely on ad hoc assistance from coworkers to learn Boeing's procurement systems and processes.

39.     The employee whose responsibilities Plaintiff assumed provided only minimal training, consisting of a few hours at most, which was inadequate for the complexity of the role.

40.    In contrast, younger employees were provided extensive, structured training, including multiple weeks of dedicated instruction and hands-on guidance with procurement systems.

41.    At the time of Plaintiff's termination, the department was comprised predominantly of significantly younger employees, including individuals in their 20s and 30s, many of whom had less experience and seniority than Plaintiff.

42.    Plaintiff repeatedly requested assistance and training from his manager, including through written communications, but such requests were largely unmet due to his manager's limited availability.

43.    Plaintiff's manager, who was responsible for providing training, rarely had sufficient time to provide meaningful instruction, resulting in Plaintiff being left to navigate complex systems and processes without adequate support.

44.    Plaintiff demonstrated strong problem-solving abilities and business judgment in handling these assignments, including proposing process improvements that reduced procurement delays and improved lead times for critical materials.

45.    For example, Plaintiff recommended issuing purchase orders for certain procurement packages while leaving others open to account for pricing adjustments, a solution that was ultimately adopted by management and resulted in improved operational efficiency.

46.    Plaintiff also identified deficiencies in supplier qualification processes that had previously gone unnoticed, further demonstrating his competence and value to Defendant.

47.    Plaintiff's contributions were recognized by Defendant, including through formal recognition such as Boeing Pride Points, further evidencing that Plaintiff was performing his job satisfactorily.

48.   Notwithstanding Plaintiff's qualifications, performance, and contributions, Defendant terminated Plaintiff while retaining younger, less experienced employees who had received greater training and support.

49.   Upon information and belief, Defendant's workforce in the relevant department skewed toward younger employees, including recent graduates, and Defendant favored such employees in training, support, and retention decisions.

50.   Plaintiff's termination under the guise of a "layoff," despite the retention of younger, less experienced employees and contractors, and despite Plaintiff's demonstrated competence, evidences that Defendant's stated reason for termination was pretextual.

51.   The totality of Defendant's actions—including denying Plaintiff training, assigning him disproportionately complex work, failing to provide adequate managerial support, and terminating him while retaining younger, less qualified employees—demonstrates a pattern and practice of discrimination based on age.

52.   Upon information and belief, these younger employees were retained during the purported "layoff," while Plaintiff—the oldest employee in the group at approximately 70 years of age—was selected for termination.

53.   Upon information and belief, Defendant's workplace culture included favoritism and preferential treatment based on personal relationships, which disproportionately benefited younger employees and further disadvantaged Plaintiff.

54.   The totality of Defendant's conduct—including denying Plaintiff training, assigning him disproportionately difficult work, and terminating him while retaining younger, less qualified employees—demonstrates a pattern of discrimination based on age.

55.   After Plaintiff's hire, Defendant hired younger employees under the age of 40 who

were less experienced yet compensated more favorably.

56.    Plaintiff was not provided with adequate or meaningful training on Boeing's procurement systems, despite the complexity of the role and the expectation that he perform at the same level as other Level 3 Procurement Agents.

57.    In contrast, substantially younger and less experienced employees were provided extensive, structured training that was not afforded to Plaintiff.

58.    For example, a younger female employee, hired as a contractor at the same Level 3 position, received several weeks of one-on-one training from the individual she replaced, as well as continued guidance and mentorship from senior personnel within the department.

59.    Upon information and belief, this same employee was assigned a significant portion of Plaintiff's prior job responsibilities while receiving enhanced training and support unavailable to Plaintiff.

60.    Additionally, a younger male employee with approximately three months of seniority—believed to be a recent college graduate—was selected to attend an approximately eight-week formal Boeing Procurement Agent training program, an opportunity never offered to Plaintiff.

61.    Plaintiff's training, by contrast, consisted only of sporadic, informal interactions lasting approximately 10–20 minutes at a time, without structure, continuity, or sufficient explanation of how procurement processes integrated within the broader system.

62.    When Plaintiff requested consistent and structured training, he was directed to seek assistance from coworkers rather than being provided formal training.

63.     When Plaintiff sought such assistance, coworkers frequently responded that they did not have time to train him and instead completed tasks themselves, further depriving Plaintiff of learning opportunities.

64.     On the limited occasions when training was provided, it was narrow in scope and failed to explain the broader operational context, rendering it insufficient for Plaintiff to independently perform his responsibilities.

65.     The individual assigned to assist with Plaintiff's training expressed reluctance to remain in the department and provided only minimal instruction—estimated at one to two hours over a two-month period—primarily limited to basic system access and minor transactional changes.

66.     Plaintiff was therefore placed at a significant disadvantage compared to younger employees who received comprehensive onboarding, mentorship, and formal training.

67.     Despite this lack of training, Plaintiff was expected to perform complex procurement functions and was evaluated alongside employees who had received substantially greater preparation and support.

68.     Plaintiff was frequently in the position of providing guidance, information, and mentorship to these more junior team members.

69.     Prior to his termination, Plaintiff informed his manager, Mary Wright, in or around early October 2024, that he required a medical leave of absence for a scheduled total left knee replacement surgery set for December 4, 2024.

70.     Plaintiff sought guidance from management regarding the process for applying for medical leave and was directed to contact appropriate internal resources.

71.     Plaintiff also informed management that his condition could require future

treatment, including possible surgery on his right knee.

72.    Plaintiff's physical condition was observable in the workplace, as he experienced difficulty walking and visibly limped when attending meetings, placing Defendant on clear notice of his medical condition.

73.    In addition to his orthopedic condition, Plaintiff experienced a serious cardiac condition, specifically atrial fibrillation, which required hospitalization for approximately one week during his employment.

74.    Defendant was aware of Plaintiff's medical conditions and need for medical leave prior to the decision to terminate his employment.

75.    On or about November 6, 2024, Plaintiff applied for disability-related leave due to a forthcoming surgery.

76.    Plaintiff's condition would substantially limit major life activities, including walking, standing, bending, and sitting.

77.    Defendant was aware of Plaintiff's need for medical leave and perceived Plaintiff as disabled.

78.    Within approximately two weeks of Plaintiff requesting leave, Defendant terminated Plaintiff's employment.

79.    Plaintiff was notified of a "permanent layoff" effective November 17, 2024.

80.    Younger, non-disabled employees were not terminated.

81.    Defendant's stated reason for termination was pretextual.

82.    Plaintiff's age and disability were motivating factors in Defendant's decision to terminate his employment.

## COUNT I
## AGE DISCRIMINATION

(Violation of the ADEA)

83.     Plaintiff hereby incorporates by reference each and every preceding paragraph as though fully set forth herein.

84.     At all times relevant hereto, Plaintiff was over the age of forty (40) and is therefore a member of a protected class under the Age Discrimination in Employment Act ("ADEA").

85.     Plaintiff was qualified for his position and performed his job duties in a satisfactory and competent manner consistent with Defendant's legitimate expectations, as evidenced by positive feedback, recognition, and his receipt of Boeing Pride Points.

86.     Plaintiff suffered an adverse employment action, including but not limited to the termination of his employment.

87.     Defendant subjected Plaintiff to materially unequal and lopsided treatment compared to substantially younger employees, including but not limited to denying Plaintiff meaningful training, mentorship, and onboarding opportunities while providing such support extensively to younger, less experienced employees.

88.     Specifically, Defendant provided younger employees with weeks of structured training, one-on-one instruction, and formal procurement training programs, while Plaintiff received only minimal, sporadic, and inadequate instruction insufficient to perform the complex requirements of his role.

89.     At the same time, Defendant assigned Plaintiff disproportionately complex and high-risk work, including responsibility for major procurement functions, despite knowingly failing to provide him with the training and support necessary to succeed in those assignments.

90.    This combination of denying Plaintiff adequate training while assigning him complex responsibilities placed Plaintiff at a significant and intentional disadvantage and effectively set him up to struggle in comparison to younger, better-supported employees.

91.    Despite these disadvantages, Plaintiff performed competently and contributed meaningfully to Defendant's operations; nevertheless, Defendant terminated Plaintiff while retaining younger, less experienced employees who had been provided greater training and support.

92.    Although Defendant characterized Plaintiff's termination as part of a "layoff," Plaintiff's position and job functions were not eliminated. Instead, upon information and belief, Plaintiff's duties were reassigned to and absorbed by substantially younger employees who remained employed by Defendant.

93.    These younger employees, who had received the benefit of training and mentorship denied to Plaintiff, continued performing the same or substantially similar work previously assigned to Plaintiff, demonstrating that Plaintiff was effectively replaced by individuals outside his protected class.

94.    Defendant's decision to deny Plaintiff training, assign him disproportionately difficult work, and then terminate him while retaining younger, less qualified employees evidences a deliberate pattern of disparate treatment and supports a reasonable inference that Defendant's stated reason for termination was pretextual.

95.    Plaintiff's age was a determinative and motivating factor in Defendant's decision to terminate his employment.

96.    By reason of the foregoing, Defendant's actions constitute unlawful age discrimination in violation of the ADEA.

97.     By reason of the foregoing, Defendant's actions constitute unlawful age discrimination in violation of the ADEA.

98.     Defendant's conduct was willful and/or demonstrated reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to liquidated and punitive damages under the ADEA and all other available relief.

**WHEREFORE**, Plaintiff respectfully requests judgment in his favor and against Defendant as follows:

   a. Awarding Plaintiff all available damages under the ADEA, including but not limited to back pay, front pay, and lost benefits;
   b. Awarding punitive damages as provided by law for Defendant's willful violations of the ADEA;
   c. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses of this action;
   d. Granting such equitable relief as the Court deems just and proper, including but not limited to reinstatement or front pay in lieu thereof; and
   e. Awarding such other and further relief as the Court deems just, proper, and equitable.

## COUNT II
## DISABILITY DISCRIMINATION
(Violation of the ADA)

99.     Plaintiff hereby realleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

100.     At all times relevant hereto, Plaintiff had an actual and/or perceived disability within the meaning of the Americans with Disabilities Act ("ADA").

101.     Plaintiff was qualified to perform the essential functions of his position, with or without reasonable accommodation, and otherwise met Defendant's legitimate expectations.

102.     Defendant had actual knowledge of Plaintiff's disability and/or regarded Plaintiff as having such a disability within the meaning of the ADA.

103.    Defendant subjected Plaintiff to an adverse employment action, including but not limited to termination, because of Plaintiff's actual and/or perceived disability.

104.    Specifically, Plaintiff informed Defendant, including his direct manager, that he was suffering from serious medical conditions, including a degenerative knee condition requiring total knee replacement surgery and a cardiac condition involving atrial fibrillation, both of which substantially limited major life activities such as walking, standing, and performing physical tasks.

105.    Plaintiff further notified Defendant that he required a medical leave of absence for his scheduled knee replacement surgery and sought guidance on how to initiate that leave. In doing so, Plaintiff effectively requested a reasonable accommodation for his disability, including leave and the support necessary to perform his job duties given his physical limitations.

106.    Defendant had actual knowledge of Plaintiff's disabilities and need for accommodation, as Plaintiff's condition was both communicated directly to management and observable in the workplace, including his difficulty walking and limping during meetings.

107.    Rather than engage in any interactive process or provide reasonable accommodation, Defendant took adverse action against Plaintiff by terminating his employment shortly after his request for medical leave and accommodation.

108.    Additionally, Defendant treated Plaintiff less favorably than similarly situated employees who were not disabled and who did not request accommodation. Specifically, Defendant retained younger, less experienced employees and provided them with training, mentorship, and continued employment opportunities that were denied to Plaintiff.

109.    Upon information and belief, these younger and non-disabled employees were not subjected to termination under similar circumstances and were instead favored in training, support, and retention decisions.

110. Defendant's stated reason for Plaintiff's termination—a purported layoff—was pretextual and not applied uniformly, as employees outside Plaintiff's protected classes were retained despite being less qualified and less experienced.

111. As a direct and proximate result of Defendant's actions, Plaintiff suffered loss of employment, wages, benefits, and other damages.

112. By reason of the foregoing, Defendant's actions constitute unlawful discrimination in violation of the ADA.

113. Defendant's conduct was willful and/or demonstrated reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to liquidated and punitive damages under the ADA and all other available relief.

**WHEREFORE**, Plaintiff respectfully demands judgment in his favor and against Defendant as follows:

    a. Awarding Plaintiff all available damages under the ADA, including but not limited to back pay, front pay, and lost benefits;
    b. Awarding compensatory damages for emotional distress, pain, and suffering as permitted by law;
    c. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses of this action;
    d. Granting such equitable relief as the Court deems just and proper, including but not limited to reinstatement or front pay in lieu thereof, and reasonable accommodation; and
    e. Awarding such other and further relief as the Court deems just, proper, and equitable.

**COUNT III**
**RETALIATION**
(Violation of the ADEA and ADA)

114. Plaintiff hereby incorporates by reference each and every preceding paragraph as though fully set forth herein.

115. Plaintiff engaged in protected activity within the meaning of applicable law,

including but not limited to:

   a. Requesting disability-related medical leave for a serious health condition, including a scheduled knee replacement surgery;

   b. Informing Defendant of physical impairments affecting major life activities, including walking and standing;

   c. Requesting assistance and accommodation in the form of training necessary to perform the essential functions of his position; and

   d. Complaining to management regarding the lack of training and unequal treatment compared to younger employees, which Plaintiff reasonably believed constituted unlawful discrimination.

116.    Defendant had actual knowledge of Plaintiff's protected activities, as Plaintiff directly communicated with his manager and other supervisory personnel regarding his need for medical leave, his medical conditions, and his concerns about inadequate training and unequal treatment.

117.    Shortly after Plaintiff engaged in these protected activities, Defendant subjected Plaintiff to an adverse employment action by terminating his employment.

118.    The temporal proximity between Plaintiff's protected activities and his termination is unusually suggestive of retaliatory intent, as Defendant terminated Plaintiff within approximately days of confirming his request for medical leave.

119.    In addition to temporal proximity, the causal connection between Plaintiff's protected activity and his termination is supported by the following:

   a. Plaintiff was treated less favorably than younger employees who did not engage in similar protected activity;

16

b. Plaintiff was denied training and support both before and after engaging in protected activity, while younger employees received enhanced training;

c. Plaintiff was selected for termination despite being qualified and performing competently, while less experienced and younger employees were retained; and

d. Defendant's stated reason for Plaintiff's termination—a purported "layoff"— was pretextual, as similarly situated employees outside Plaintiff's protected categories were not terminated.

120. Defendant's actions would dissuade a reasonable employee from engaging in protected activity, including requesting medical leave or complaining about discriminatory practices.

121. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered damages including, but not limited to:

a. Loss of wages and employment benefits;

b. Loss of future earning capacity;

c. Emotional distress and mental anguish; and

d. Other compensatory and economic damages.

122. Defendant subjected Plaintiff to an adverse employment action, including but not limited to the termination of his employment.

123. Defendant's conduct was willful and/or demonstrated reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to liquidated and punitive damages under the ADEA, ADA and all other applicable statutes/laws and all other available relief.

124. The temporal proximity between Plaintiff's protected activity and Defendant's adverse action, together with other evidence, establishes a causal connection between the two.

125.    By reason of the foregoing, Defendant's actions constitute unlawful retaliation in violation of applicable federal and/or state law.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant:

a. Back pay and front pay;
b. Compensatory damages;
c. Liquidated damages under the ADEA;
d. Attorneys' fees and costs;
e. Pre- and post-judgment interest;
f. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable in this action.

Respectfully submitted,
LEESON & LEESON

BY:    *//s// Joseph F. Leeson, III*
JOSEPH F. LEESON, III, ESQUIRE
Attorney for Plaintiff
PA Bar Id. No. 328520
70 East Broad Street
Bethlehem, PA 18016
(610) 691-3320
jleeson@leeson-law.com

# EXHIBIT 1

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St., Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/03/2026

**To:** Mr. Roger Dwyer
3326 Darien Road
Bethlehem, PA 18017
Charge No: 530-2025-03721

EEOC Representative and Phone:     Legal Unit Representative
267-589-9707

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 530-2025-03721.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
02/03/2026
Karen McDonough
Deputy Director

**Cc:**
Amy Bennett
Ogletree Deakins
300 North Meridian St. Suite 2700
Indianapolis, IN 46204

Todd Schroeder
The Boeing Company
PO Box 3707 M/C 074-02
Seattle, WA 98124

Katie Bayt
Ogletree Deakins
300 North Meridian St. Suite 2700
Indianapolis, IN 46204

NA NA
1 S Stewart Ave
Ridley Park, PA 19078

Incident  Location
Boeing
Boeing 1 S Stewart Ave
Ridley Park, PA 19078

Jeannie Yim
Ogletree Deakins
599 Lexington Avenue, Suite 1700
New York, NY 10022

Jospeh F Leeson, III Esq.
70 East Broad Street P. O. Box 1426
Bethlehem, PA 18016


Please retain this Notice for your records.

Enclosure with EEOC Notice of Closure and Rights (05/25)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 530-2025-03721 to the District Director at Karen McDonough, 801 Market St Suite 1000, Philadelphia, PA 19107.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 530-2025-03721 to the District Director at Karen McDonough, 801 Market St Suite 1000, Philadelphia, PA 19107.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (05/25)

are not considered in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

### "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at* http://www.eeoc.gov/laws/types/disability_regulations.cfm.